## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RONNIE EUGENE FUSTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-179-SLP |
| | ) | |
| CHRISTE QUICK, Warden,[1] | ) | |
| Oklahoma State Penitentiary, | ) | |
| | ) | |
| Respondent. | ) | |

### ORDER

Petitioner, a state court prisoner, has filed a petition for writ of habeas corpus seeking relief pursuant to 28 U.S.C. § 2254 (Petition) [Doc. No. 16].[2] Petitioner challenges the first degree murder conviction and death sentence entered against him in Oklahoma County District Court Case No. CF-2013-0438. Tried by a jury in 2017, Petitioner was found guilty of murder in the first degree (Count I) and possession of a firearm after juvenile adjudication (Count II). Criminal Appeal Original Record (Orig. Rec.) Vol. XI at 2195, Vol. XII at 2202. Petitioner received a 10-year sentence for Count II and was sentenced to death for Count I. *Id.* Vol. XII at 2202, 2244. In support of the death sentence, the jury found two aggravating circumstances: (1) Petitioner knowingly created a great risk of death to more than one person and (2) Petitioner will probably commit criminal acts of violence constituting a continuing threat to society. *Id.* Vol. XII at 2244.

---

[1] Christe Quick is substituted as the proper party respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Page citations herein reference the Court's CM/ECF pagination.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals (OCCA).  The OCCA affirmed in a published opinion.  *Fuston v. State*, 470 P.3d 306 (Okla. Crim. App. 2020), *cert. denied*, 141 S.Ct. 1400 (2021) (*Fuston DA*).  Petitioner also filed two applications for post-conviction relief, both of which were denied by the OCCA in unpublished opinions.  *Fuston v. State*, PCD-2017-806 (Okla. Crim. App. June 18, 2020); *Fuston v. State*, PCD-2022-286 (Okla. Crim. App. July 7, 2022) (*Fuston SAPCR*).

Petitioner presents eight grounds for relief.  Respondent has responded to the petition (Response) [Doc. No. 20] and Petitioner has replied (Reply) [Doc. No. 23].  After Petitioner's subsequent application for post-conviction relief to the OCCA, the Court allowed Petitioner to file a supplemental brief (Petitioner's Supp. Br.) [Doc. No. 28], to which Respondent has responded in opposition [Doc. No. 30] and Petitioner has replied (Petitioner's Supp. Reply) [Doc. No. 31].  Petitioner also filed a Motion for Discovery [Doc. No. 17] and a Motion for Evidentiary Hearing [Doc. No. 21] to which responses were filed [Doc. Nos. 18, 22].  After a thorough review of the entire state court record, the pleadings and materials submitted in this case, and the applicable law, the Court finds that, for the reasons set forth below, Petitioner is not entitled to the requested relief.

## I.     Facts

In adjudicating Petitioner's direct appeal, the OCCA set forth a summary of the facts.  Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct."  Although this presumption may be rebutted, the Court finds that Petitioner has not done so.  *See* discussion *infra*.  Moreover, the

OCCA's statement of the facts is an accurate recitation of the presented evidence.  Thus,

as determined by the OCCA, the facts are as follows:

> Appellant [Petitioner] was convicted of shooting and killing Michael Rhodes (the decedent) on October 20, 2012, as the decedent and his three (3) year old daughter sat on the couch in their Oklahoma City home.  The crime was the result of an ongoing dispute between the decedent's niece, Brittany Dillard, and a group of girls associated with the 107 Hoover Crips street gang.

> Prior to the shooting, the decedent and his wife opened up their home to seven (7) of his great nephews and nieces, who had been in the custody of the Department of Human Services.  One of those nieces, Ms. Dillard, had been asked to leave the Rhodes' home because of behavior problems, but shortly before October 20, she was allowed to return.  At the time of the shooting, Dillard was in a relationship with Terrell Howard, a Crips member.  On October 19, 2012, Dillard became involved in a verbal altercation over the telephone with several women who answered her call to Howard's cell phone.  These women, members of a subset of the 107 Hoovers known as the "Dulxw Girls", included Atiana Jordan (whose gang name was "Lady Bucky") and Taneecia Pennon (whose gang name was "Lady Get One").  They escalated the altercation by repeatedly calling Dillard on her cell phone, threatening her and her baby, and offering to fight Dillard.  The women drove by the Rhodes' home more than once.  An anxious Dillard called Chris O'Neal, the father of her baby, and a member of the Bloods street gang.  O'Neal drove to the Rhodes' home and fired gunshots at the Dulxw women.  Jordan and Pennon called Dillard about the shooting and returned to the Rhodes' home, throwing rocks at the house and breaking two windows.

> Returning home to find the broken windows, and concerned by what Dillard had told them, the Rhodes called the Department of Human Services and had the foster children picked up for their own safety.  Dillard left the residence, to stay with O'Neal's mother, and Mrs. Rhodes and her daughter left the residence for the night.

> Sometime late on the 19th or early on 20th of October, the tires on the Rhodes' car parked in their driveway were slashed.  The police were called and investigated the situation.  Mrs. Rhodes spoke with Dillard about the situation and learned that Dillard continued to get phone calls and Facebook messages from the Dulxw women.  Mrs. Rhodes also received numerous phone calls on her home phone from the Dulxw women.  She repeatedly told

them that Dillard was not at their home and the women should not come back to the house.

The evening of October 20, Mrs. Rhodes went out to dinner with a friend while the decedent stayed home with their daughter and nineteen (19) year old son, Jalon. The decedent was on the couch with his sleeping daughter while his son was upstairs playing videogames. He was just about to fall asleep when the front door burst open and Appellant and his companions entered the house firing weapons.

A few hours earlier, Jordan and Pennon called Appellant, a close friend and fellow member of the Hoover Crips. Despite the fact Appellant lived in Enid, the Dulxw women asked him to come to Oklahoma City because of their conflict with Dillard. Appellant, accompanied by Brian Butler, drove to Pennon's Oklahoma City apartment. Appellant, Butler, Jordan, Pennon, Howard, and another "young guy" drove in two (2) cars to south Oklahoma City to "rob some Mexicans." When that effort did not prove fruitful, the group drove to the Rhodes' home looking for Dillard. As they drove, Appellant communicated with Pennon, who was in a different car. The two cars stopped at a church near the Rhodes' residence and all but Butler got out and talked. The group then got back in the two cars and drove near the Rhodes' residence, parking down the street near a stop sign. Appellant told the "youngster" to get in the driver's seat of his car while Butler waited in the passenger seat. Appellant, Pennon, Howard, and Jordan walked up to the residence. Gunshots rang out and Appellant and Jordan ran back to the car. Initially reluctant to get into the car, Jordan was pulled into the car by Appellant, telling him "they were supposed to kill everybody in the house."

Upon hearing the gunshots, Jalon ran downstairs to find the front door open, his sister crying, and his father falling off the couch. Jalon sat his father up and called 911. The decedent had been shot three (3) times. The fatal shot entered his left shoulder before striking his aorta and both lungs. His blood sprayed on his young daughter, but she had not been struck by the gunfire. She later told police that the "monsters hurt my daddy."

After leaving the Rhodes' home, Appellant and his companions dropped Jordan off at her home then went to the home of Butler's cousin. There, Appellant washed his hands in gasoline and told Butler that he fired four (4) shots, and that "the dude was getting up or reaching for something." Appellant routinely carried a .45 caliber Taurus handgun. He had this weapon with him after the murder at the home of Butler's cousin and when he returned to Enid.

Appellant and Butler drove back to Enid during the early morning hours of October 20. During that time, Appellant changed his cell phone number. When Butler told him the murder would come back to "haunt" him, Appellant became angry and said he was tired of people telling him what to do and how to live his life. In the days and weeks that followed the murder, Appellant told Butler that "the dude" had died but the "girl", presumably Dillard, would not testify because they were going to "handle it on the streets."

After his arrest, Appellant denied being near the Rhodes' home at the time of the murder but his cell phone records placed him in the area. Other evidence established his relationship with Jordan and Pennon. A phone call from Appellant while in jail to his cousin Treylon Haley led police to the murder weapon – a .45 caliber Taurus.

Based upon this evidence, the jury convicted Appellant of first degree malice murder. In the punishment phase of trial, the State sought the death penalty as punishment for the decedent's murder and presented evidence supporting two (2) aggravating circumstances: 1) the defendant created a great risk of death to more than one person; and 2) the existence of a probability that the defendant will commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.2011, § 701.12(2) & (7).

In addition to incorporating all of the first stage evidence, the State presented evidence to support the alleged aggravating circumstances. The State's evidence showed that in 2009, Appellant assaulted a fellow student and stole a cell phone. In September 2012, approximately one month before the decedent's murder, Appellant fired his weapon in a drive-by shooting in Oklahoma City striking the victim in the back. In December 2012, shortly after the decedent's murder, Appellant shot and killed Heath Crites in Enid, Oklahoma. The State's evidence also showed multiple instances where Appellant attacked and assaulted other inmates while imprisoned.

In mitigation, the defense presented eight (8) witnesses. These included Appellant's mother, sister, and twin brother; his Juvenile Affairs probation officer; staff members from Varangon Academy, a juvenile treatment center; and psychologist Dr. Terese Hall. After hearing all of the evidence in aggravation and mitigation, the jury found the existence of two alleged aggravators and sentenced Appellant to death. The trial court sentenced accordingly.

*Fuston DA*, 470 P.3d at 313-14 (paragraph numbers omitted).

## II.     Standards of Review

### A.     Limited Merits Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) circumscribes the Court's review of claims that were adjudicated on the merits in state court proceedings. 28 U.S.C. § 2254; *see also Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011). Where the state court adjudicated a claim on the merits, this Court may grant habeas relief only if Petitioner can establish that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d)(1)-(2).

Clearly established federal law under § 2254(d)(1) refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-13. A decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

Under § 2254(d)(2), relief is only permitted when the state court's decision is "*based on*" the unreasonable factual determination. *Byrd*, 645 F.3d at 1172. A factual

determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Rather, the factual determination must be "objectively unreasonable in light of the evidence presented in the state-court proceeding," meaning "all reasonable minds reviewing the record would agree it was incorrect." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018) (internal quotation marks omitted, alterations incorporated). "Thus, a state court's factual findings are presumed correct, and a petitioner bears the burden of rebutting that presumption by 'clear and convincing evidence.'" *Andrew v. White*, 62 F.4th 1299, 1311 (10th Cir. 2023) (quoting 28 U.S.C. § 2254(e)(1)).

Importantly, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). And a state court's application of federal law is unreasonable only if "*every* fairminded jurist" would "reach a different conclusion." *Brown v. Davenport*, 596 U.S. 118, 144 (2022). In other words, the state-court determination must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This standard was meant to be difficult to meet and "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (internal quotation marks omitted). Finally, review of a claim under § 2254(d) "is limited to the

record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## B. Exhaustion as a Preliminary Consideration

AEDPA codifies the exhaustion doctrine, which is a matter of comity and requires the Court to consider in the first instance whether Petitioner has presented his grounds for relief to the OCCA. *See* 28 U.S.C. § 2254(b)(1); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("[T]he States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights."). The doctrine provides that, aside from two narrow exceptions, habeas relief shall not be granted unless the remedies available in state court have been exhausted. Habeas relief may, however, be denied notwithstanding the failure of Petitioner to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

## C. Procedural Bar

In addition to the issue of exhaustion, a federal habeas court must also examine the state court's resolution of the presented claim. "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729). This doctrine bars federal habeas when a petitioner has failed to comply with relevant state procedural rules as the state court's refusal to adjudicate the claim on procedural grounds qualifies as an independent and adequate state-law ground. *Id.*; *Coleman*, 501 U.S. at 729-30.

### III.   Analysis

**A.   Ground One:  Intellectual Disability**

Petitioner's first ground for relief is that his death sentence violates the Eight and Fourteenth Amendments of the United States Constitution because he is intellectually disabled.   Petitioner asserts that Oklahoma's intellectual disability statute is unconstitutional because it disregards current clinical standards by adopting a firm cut-off based on a single intelligence quotient (IQ) score without regard for either additional, lower IQ scores or the Flynn effect.[3]

*1.   Procedural and Factual Background*

a.   Oklahoma's Intellectual Disability Statute

In *Atkins v. Virginia*, 536 U.S. 304 (2002), the Supreme Court held that the Eighth Amendment's prohibition on "cruel and unusual punishments" forbids the execution of intellectually disabled criminal defendants.   However, "recognizing that 'serious disagreement' could exist regarding who should be deemed so intellectually disabled as to be categorically excluded from execution, the Court 'left to the States the task of developing appropriate ways to enforce the constitutional restriction.'"   *Smith v. Duckworth*, 824 F.3d 1233, 1243 (10th Cir. 2016) (quoting *Atkins*, 536 U.S. at 317 (alterations incorporated)).

---

[3] The Flynn effect hypothesizes that older IQ tests produce higher, or inflated, IQ scores because they are normed to a different generational population and individuals in society have become more intelligent over time. *Tryon v. Quick*, 81 F.4th 1110, 1143 n.13 (10th Cir. 2023) (citing James R. Flynn, Massive IQ Gains in 14 Nations: What IQ Tests Really Measure, 101 Psychol. Bull. 171, 172-77 (1987)).

Oklahoma implemented *Atkins*' mandate by enacting Okla. Stat. tit. 21, § 701.10b.[4] This statute provides that a defendant is intellectually disabled – and therefore ineligible for the death penalty – if he can prove three elements: "significantly subaverage general intellectual functioning, significant limitations in adaptive functioning, and that the onset of the mental retardation[5] was manifested before the age of eighteen (18) years." *Id.* at § 701.10b(C). Regarding the first element, the statute provides that "[a]n intelligence quotient of seventy (70) or below on an individually administered, scientifically recognized standardized intelligence quotient test administered by a licensed psychiatrist or psychologist is evidence of significantly subaverage general intellectual functioning" and that "the standard measurement of error for the test administrated shall be taken into account." *Id.* Of crucial import to this case, the statute also includes a bright-line cut off score: "in no event shall a defendant who has received an intelligence quotient of seventy-six (76) or above on any individually administered, scientifically recognized, standardized intelligence quotient test administered by a licensed psychiatrist or psychologist, be considered mentally retarded and, thus, shall not be subject to any proceedings under this section." *Id.* Oklahoma has interpreted an IQ score above 76 as excluding a finding of

---

[4] Oklahoma first defined intellectual disability in *Murphy v. State*, 54 P.3d 556 (Okla. 2002), *overruled on other grounds by Blonner v. State*, 127 P.3d 1135 (Okla. 2006). The statute supplanted this definition and was the governing law at the time of Petitioner's trial.

[5] The statute has since been amended to use the term "intellectual disability" rather than "mental retardation." The Supreme Court also formerly employed the phrase "mental retardation," but now "uses the term 'intellectual disability' to describe the identical phenomenon." *Hall v. Florida*, 572 U.S. 701, 704. The Court also uses the term "intellectual disability."

intellectual disability even if a lower score is also available. *Smith v. State*, 245 P.3d 1233, 1237 (Okla. Crim. App. 2010).

        b.    <u>Petitioner's Testing; Trial and Direct Appeal / State Court Record</u>

Petitioner scored an 81 on an intelligence test administered in 2004 when he was twelve years old. A test given in 2008 resulted in a score of 67; however, as noted by the OCCA, "testimony showed that was not a full-scale IQ test and the result was determined to be only an estimated IQ score." *Fuston DA*, 470 P.3d at 315. After Petitioner was charged with first degree murder in January 2013, he was administered additional intelligence tests between March 2014 and June 2015, resulting in IQ scores of 59, 69 and 75, respectively. *Fuston DA*, 470 P.3d at 315.[6]

Prior to his trial, Petitioner filed a Notice of Intent to Rely on 21 O.S. § 701.10b and Request for Evidentiary Hearing and Dismissal of Bill of Particulars asserting that he was exempt from the death penalty by virtue of his "mental retardation (intellectual disability)" and requesting an evidentiary hearing. Orig. Rec. Vol. III at 546-47. Relying on *Murphy v. State*, 54 P.3d 556 (Okla. 2002), the trial court ultimately ruled that Petitioner was not entitled to an *Atkins* hearing. Transcript of Jan. 8, 2016 Hearing at 18-19. Petitioner renewed his request for an *Atkins* hearing closer to trial but was again denied by the trial judge. Transcript of Aug. 16, 2016 Hearing at 18-23.

---

[6] Petitioner also scored an 80 on a test administered in 2014, but both parties agree that score is not reliable. *Fuston DA*, 470 P.3d at 315; Petition at 42 n.28; Response at 24 n.3.

On direct appeal, Petitioner argued that the trial court erred in denying his request for an *Atkins* hearing, urging the OCCA to find § 701.10b unconstitutional and contending the Supreme Court cases decided since *Murphy* entitled him to an *Atkins* hearing. *Fuston DA*, 470 P.3d at 316. The OCCA denied Petitioner's proposition, holding that Petitioner had failed to show that § 701.10b was unconstitutional and failed to show any error in the trial court's denial of an *Atkins* hearing. *Fuston DA*, 470 P.3d at 318.

Petitioner now argues before this Court that (1) under 28 U.S.C. § 2254(d)(1), the OCCA's determination that Okla. Stat. tit. 21, § 701.10b comports with the Eighth Amendment is an unreasonable application of *Atkins* and its progeny; and (2) under 28 U.S.C. § 2254(d)(2), the OCCA's determination that the trial court did not err in denying an *Atkins* hearing was based on unreasonable determination of facts.

### 2.     *Procedural Bar*

Respondent initially opposes Petitioner's intellectual disability claim on the grounds that it is unexhausted and subject to an anticipatory procedural bar. Respondent contends that the claim presented to this habeas Court is sufficiently different from the claim Petitioner presented in state court, thus rendering the habeas claim unexhausted.

To exhaust a claim, that claim must be "fairly presented to the state court." *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (internal quotation marks omitted). That means the "substance of the federal claim [must be] raised in state court." *Simpson v. Carpenter*, 912 F.3d 542, 565 (10th Cir. 2018). "The petitioner need not cite 'book and verse on the federal constitution,' but the petitioner cannot assert entirely different arguments from those raised before the state court." *Bland*, 459 F.3d at 1011 (quoting

12

*Picard v. Connor*, 404 U.S. 270, 278 (1971)).  Instead, the claims in state and federal court should be of the same nature.  However, a petitioner is not precluded from trying to bolster his claim in federal habeas review.  *See Simpson*, 912 F.3d at 566.

Petitioner's arguments on direct appeal challenged the constitutionality of § 701.10b and asserted he was entitled to an evidentiary hearing on his intellectual disability.  *Fuston v. State*, D-2017-773, Brief for and on Behalf of Ronnie Eugene Fuston, Appellant (Direct Appeal Brief), Nov. 2, 2018, at 41; *see generally id.* at 31-44.  Petitioner argued that application of the statute's bright-line cutoff to his score of 81, without adequate consideration of the standard error of measurement (SEM) and the Flynn effect, failed to conform to medical standards, thus violating *Atkins*, 536 U.S. 304; *Hall v. Florida*, 572 U.S. 701 (2014); *Brumfield v. Cain*, 576 U.S. 305 (2015); and *Moore v. Texas*, 581 U.S. 1 (2017).  Direct Appeal Brief at 41-42.  Here, Petitioner argues that reliance upon the bright-line cutoff with respect to his score of 81, without adequate consideration of the Flynn effect or other test scores below the cutoff, fails to conform to current medical standards, thus violating *Atkins* and progeny.  Petition at 28-39.  Though the arguments before the two courts are not identical, they are of the same nature and Petitioner's arguments before the state court raised the substance of his arguments that are before this Court.  Accordingly, the Court finds Petitioner fairly presented the constitutional claim to the OCCA and, thus, the claim is exhausted.  *See Picard*, 404 U.S. at 275-76 (explaining that fair presentation to state courts includes presentation of the facts and of the constitutional claims); *accord Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Grant v. Royal*, 886 F.3d 874, 890-91 (10th Cir. 2018).

3.    *Discussion*

a.    Section 2254(d)(1)

i.    Clearly Established Law

As set forth above, *Atkins* prohibits execution of intellectually disabled criminals. The Supreme Court observed that the Eighth Amendment's prohibition on cruel and unusual punishment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Atkins*, 536 U.S. at 311-12 (internal quotation marks omitted). And the Supreme Court identified state legislation as the "clearest and most reliable objective evidence of contemporary values." *Id*. at 312 (internal quotation marks omitted).

Petitioner asserts, however, that Oklahoma's legislation addressing intellectual disability is unconstitutional because, by adopting a firm cut-off based on a single IQ score without regard to either the Flynn effect or other, lower IQ scores, it disregards current clinical standards.[7] Petitioner claims that the failure to bring Okla. Stat. tit. 21, § 701.10b into compliance with clinical standards runs afoul of *Atkins, Hall, Brumfield,* and *Moore*.

---

[7] Petitioner's arguments focus almost exclusively on asserting that failure to account for the Flynn effect violates federal law. *See* Petition at 34-37. But, while Petitioner's arguments that failure to consider additional lower scores are significantly less robust, the Court finds Petitioner has presented argument that that aspect of the statute is contrary to federal law. *See id.*; *cf. Smith v. Duckworth*, 824 F.3d 1233, 1245 n.7 (10th Cir. 2016) ("While Mr. Smith observes generally that, under Oklahoma law, 'defendants who have just one IQ score above 75 *always* fall outside of *Atkins*' protection, regardless of . . . the existence of other scores below 75,' he raises no specific challenge to this aspect of the law beyond his Flynn [e]ffect claim and has not otherwise attempted to demonstrate that such a rule is contrary to federal law.").

At issue in *Hall* was an intellectual disability statute that required the defendant to present "an IQ test score of 70 or below before presenting any additional evidence of his intellectual disability." *Hall*, 572 U.S. at 707. The Supreme Court struck down the statute and held that "where an IQ score is close to, but above, 70, courts must account for the test's 'standard error of measurement.'" *Moore*, 581 U.S. at 13 (quoting *Hall,* 572 U.S. at 713, 723). In reaching this conclusion, the Supreme Court recognized that "clinical definitions of intellectual disability . . . were a fundamental premise of *Atkins*" and those definitions "have long included the SEM." *Hall*, 572 U.S. at 720. However, *Hall* "expressly excluded from its analysis 'the rule in States which use a bright-line cutoff at 75 or greater' because the petitioner had not challenged the higher IQ cutoff." *Smith v. Duckworth*, 824 F.3d 1233, 1246 n.8 (2016) (quoting *Hall*, 572 U.S. at 715). *Hall*, therefore, cannot "be read as more broadly prohibiting the application of Oklahoma's IQ cutoff score of 76." *Id.*

In *Brumfield,* the Supreme Court held that it was factually unreasonable for the state court to conclude that an IQ score of 75 precluded an intellectual disability finding. *Brumfield,* 576 U.S. at 316. Relying on *Hall*, the Court noted that the defendant's IQ score of 75 was within the range of potential intellectual disability when accounting for the standard error of measurement. *Id.* at 315. Thus, like *Hall*, *Brumfield* says nothing about the correctness of adopting a cutoff score that does not account for the Flynn effect or the use of multiple scores.

Finally, in *Moore*, which did not arise under AEDPA, the Supreme Court rejected Texas' use of nonclinical factors untethered to any medical guidance and held that,

consistent with *Atkins* and *Hall*, an intellectual disability "determination must be 'informed by the medical community's diagnostic framework.'" *Moore*, 581 U.S. at 13 (quoting *Hall*, 572 U.S. at 721).  The Court continued to recognize, however, "that being informed by the medical community does not demand adherence to everything stated in the latest medical guide." *Id*.

Taken together, these cases establish that an intellectual disability determination must be informed by current medical standards and that an IQ cutoff score must account for the standard error of measurement.  None of these cases specifically addresses the alleged flaws Petitioner identifies in Oklahoma's statute, i.e. use of a single cutoff score without regard for either the Flynn effect or additional scores.  *Cf. Tryon v. Quick*, 81 F.4th 1110, 1146 (10th Cir. 2023) (explaining that the OCCA's determination that the statutory cutoff is constitutional and does not require application of the Flynn effect was not an unreasonable application of federal law); *see also Postelle v. Carpenter*, 901 F.3d 1202, 1212 (10th Cir. 2018) (explaining that Supreme Court jurisprudence on intellectual disability does not "squarely address[]" application of the Flynn effect); *Smith*, 824 F.3d at 1244-1246 (explaining that no clearly established federal law requires application of the Flynn effect and denying habeas relief where the petitioner argued that Oklahoma's IQ cutoff is contrary to *Atkins*).

ii.    Analysis

For purposes of AEDPA, clearly established federal law "refers to the holdings, as opposed to the dicta" of the Supreme Court's decisions.  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (internal quotation marks omitted).  A federal habeas court may not extend these

holdings as they "must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008); *see also White v. Woodall*, 572 U.S. 415, 426 (2014) ("[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." (internal quotation marks omitted)).  Where the Supreme Court's cases "give no clear answer to the question presented," there cannot be an unreasonable application of clearly established federal law.  *Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *see also Carey v. Musladin*, 549 U.S. 70, 77 (2006).  Further, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted).

Here, no decision of the Supreme Court "squarely addresses" the purported flaws Petitioner identifies in the statute.  *Wright*, 552 U.S. at 125.  As such, application of Supreme Court precedent to Petitioner's facts would require an extension of clearly established federal law, which AEDPA forbids.  *See White*, 572 U.S. at 426.

Notably, the Tenth Circuit recently rejected a very similar challenge to Oklahoma's statute in which, within his ineffective assistance of counsel claim, the petitioner challenged the constitutionality of the Oklahoma statute "because it establishes a firm cutoff for anyone with any IQ score above 76, even where the individual may have a second IQ score below 76 and well into a recognized intellectual disability range" and because it disregards the Flynn effect.  *Tryon*, 81 F.4th at 1143.  On habeas review, this Court had concluded both that "the OCCA did not unreasonably apply federal law when rejecting

17

Mr. Tryon's constitutional challenge because none of the Supreme Court cases addressed a state statute, like Oklahoma's, with a cutoff that accounted for the standard error of measurement by excluding only those defendants who scored above a 75 on an IQ test" and that "it was reasonable for appellate counsel to cull out a challenge to the constitutionality of Oklahoma's statute as nothing would have compelled the OCCA to invalidate the Oklahoma statutory criteria for intellectual disability." *Id.* Explaining that it has previously "concluded the OCCA has not unreasonably applied federal law by declining to adopt the Flynn Effect and upholding the constitutionality of its statute," the Tenth Circuit denied the petitioner a certificate of appealability, holding that this Court's determinations were not debatable or wrong. *Id.* at 1146.

Further, the statute's 76-point cutoff is consistent with *Atkins*' explanation that "an IQ between 70 and 75 or lower" is "typically considered the cutoff IQ score for the intellectual function prong of the mental retardation definition." *Atkins*, 536 U.S. at 309 n.5.[8]   To the extent the statute may not encompass every current clinical practice, "adherence to everything stated in the latest medical guide" is not required. *Moore*, 581 U.S. at 13.  In short, Petitioner has failed to meet his burden of showing that there is no room for fairminded disagreement as to whether Oklahoma's intellectual disability statute falls outside the range of discretion permitted by *Atkins* and its progeny.

---

[8] The most current version of the Diagnostic and Statistical Manual of Mental Disorders likewise states that "[i]ndividuals with intellectual developmental disorder [a term "equivalent" to intellectual disability] have scores of approximately two standard deviations or more below the population mean, including a margin for measurement error (generally ±5 points).  On tests with a standard deviation of 15 and a mean of 100, this involves a score of 65-75 (70 ± 5)."  Diagnostic and Statistical Manual of Mental Disorders 38 (5th ed. Text Revision 2022).

b.    Section 2254(d)(2)

Petitioner further argues that the OCCA's determination that the trial court did not err in denying him an *Atkins* hearing due to his IQ score of 81 was based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d)(2). Specifically, Petitioner contends that the OCCA's "summary rejection of the Flynn effect's potential applicability" "conflat[ed] the statute's silence on [the Flynn effect] with proof it could not be considered," thus leading the OCCA to base its denial of a hearing on "a non-existent statutory reason." Petition at 38-39.

The OCCA's factual determinations are presumed correct unless Petitioner overcomes the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here the factual finding that Petitioner challenges is the OCCA's determination that

> the Oklahoma Legislature has directed that only the standard error of measurement be included in the consideration of a defendant's I.Q. scores when making a mental retardation determination. Thus, it seems that under the Oklahoma statutory scheme, the Flynn Effect, whatever its validity, is not a relevant consideration in the mental retardation determination for capital defendants.

*Fuston DA*, 470 P.3d at 316 n.3. Petitioner has not shown by clear and convincing evidence that the OCCA's description of the statute, which directs that only the SEM be included in the consideration of an IQ score, is incorrect. *See* Okla. Stat. tit. 21, § 701.10b; *cf. Tryon*, 81 F.4th at 1146 (noting both that the OCCA had previously upheld the statute's constitutionality against a challenge based on the Flynn effect, and that the Tenth Circuit had previously concluded that the OCCA had not unreasonably applied federal law by declining to adopt the Flynn effect and upholding the constitutionality of its statute). As

such, Petitioner has not shown by clear and convincing evidence that the OCCA's determination that Petitioner's higher score, which would only fall in the range of potential intellectual disability if the Flynn effect were applied, precluded his eligibility for an *Atkins* hearing was an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief under 28 U.S.C. § 2254(d)(2).

### 4.   Conclusion

Relief is denied on Ground One. Petitioner has failed to meet his burden under 28 U.S.C. § 2254(d)(1) of showing that the OCCA's determination that Okla. Stat. tit. 21, § 701.10b is constitutional was an unreasonable application of *Atkins* and its progeny. Additionally, Petitioner has failed to meet his burden under 28 U.S.C. § 2254(d)(2) of showing that the OCCA's determination that the trial court did not err in denying an *Atkins* hearing was based on an unreasonable determination of facts. Because the Court denies relief on this claim, it will not consider the evidence Petitioner presents regarding his intellectual disability. *See* Petition at 39-48.

## B.   Ground Two: Ineffective Assistance of Counsel

Petitioner's second ground for relief is that he was deprived of effective assistance of counsel in various ways by his trial counsel, appellate counsel, and original post-conviction counsel. Petitioner presents six primary subparts within this claim, but acknowledges that only one of those grounds was previously presented to the state courts. Petition at 49 n.38. After filing his federal habeas petition, Petitioner returned to the OCCA to file a Subsequent Application for Post-Conviction Relief (SAPCR) to exhaust these

claims, but the OCCA applied Oklahoma's procedural bar, finding each of the claims could have been raised in prior proceedings. *Fuston SAPCR*, at 4, 7-10, 13.

### 1.    *Subclaims That Are Procedurally Barred*

Petitioner's five subclaims that were not presented to the OCCA until his SAPCR are that trial counsel ineffectively litigated his *Atkins* hearing motion; ineffectively litigated his challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986); failed to investigate and litigate a guilt-phase case; and failed to adequately investigate, prepare, and litigate during the sentencing phase.  Additionally, Petitioner did not present until the SAPCR the claim that his prior appellate and post-conviction counsel omitted these ineffective assistance of trial counsel claims.[9]

Ordinarily, federal courts cannot consider claims on habeas review when the state court barred those claims pursuant to an independent and adequate state procedural rule. *Davila v. Davis*, 582 U.S. 521, 527 (2017).  Here, Respondent argues Petitioner's claims are barred pursuant to an independent and adequate state procedural rule such that the Court cannot consider it.  Even when adequacy and independence are met, however, it is possible for a petitioner to overcome the procedural bar by demonstrating either cause for the default and actual prejudice stemming from an alleged violation of federal law or that the federal court's failure to consider the matter would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In his supplemental briefing, Petitioner

---

[9] The Tenth Circuit found the claim of ineffective assistance of first-conviction counsel was properly brought, but denied it on the merits.  *Fuston SAPCR*, at 10-13.

claims that the state procedural rule is inadequate; that the procedural rule is not independent; that he can show cause and prejudice to excuse the default; and, as separately argued with respect to the claim regarding trial counsel's litigation of his pre-trial *Atkins* motion, that failure to consider his claim would result in a fundamental miscarriage of justice.

### a.   Adequate and Independent State Procedural Rule

Respondent presents argument that the Oklahoma statute relied on by the OCCA, Okla. Stat. tit. 22, § 1089(D)(8), is an independent and adequate procedural bar.  But Petitioner attacks both the adequacy and the independence of the procedural rule relied on by the OCCA in finding his claims procedurally barred.  He argues that the rule is not adequate because the OCCA has, on a handful of occasions, exercised its discretion to review the merits of an otherwise barred claim to avoid a fundamental miscarriage of justice.  *See, e.g., Valdez v. State*, 46 P.3d 703 (Okla. Crim. App. 2002).  He also argues that the rule is not independent of federal law because in declining to exercise its discretion to review barred claims in order to avoid a miscarriage of justice, the OCCA necessarily reviewed the merits of any underlying federal claims.  The Tenth Circuit has previously rejected similar arguments and held that Oklahoma's procedural rule is independent and adequate.  *E.g., Pavatt v. Carpenter*, 928 F.3d 906, 929-30 (10th Cir. 2019); *Banks v. Workman*, 692 F.3d 1133, 1145-47 (10th Cir. 2012).  This Court is obliged to follow the

Tenth Circuit's rulings and conclude that Petitioner's arguments do not undermine the adequacy or independence of Oklahoma's procedural rule.[10]

b.   <u>Cause and Prejudice</u>

Petitioner alternatively asserts he can overcome procedural default with cause and prejudice.  Where a habeas petitioner has defaulted a claim, federal review is prohibited unless he can show both cause for the default and prejudice.  *Simpson v. Carter*, 912 F.3d 542, 571 (10th Cir. 2018).  To establish cause, Petitioner must show that "some objective factor external to the defense" impeded his efforts to comply with the state procedural rule.

---

[10] Petitioner additionally argues that application of § 1089(D)(8) was not independent of federal law because the OCCA's review of Petitioner's ineffective assistance of post-conviction counsel claim relied on consideration of Petitioner's underlying constitutional claims of ineffective assistance of trial counsel.  Petitioner's Supp. Br. at 20-21 (citing *Fuston SAPCR*, at 10-12).  Petitioner's argument is unavailing.

Petitioner relies upon *Goode v. Carpenter*, 922 F.3d 1136, 1159 (10th Cir. 2019), to argue that the Tenth Circuit had "recognized in an identical posture" the OCCA's consideration of a substantive constitutional question as a necessary precursor to its procedural decision.  *Fuston SAPCR*, at 10.  But Petitioner overstates the Tenth Circuit's precedent as the Tenth Circuit had simply bypassed the question of whether it was bound by the OCCA's procedural bar of the petitioner's ineffective assistance of trial counsel claim, and, instead, gave AEDPA deference to analysis in the OCCA's procedural determination in order to deny the claim on the merits.  *See Bryant v. Dowling*, 20-5100, 2022 WL 2064677, at *3 (10th Cir. June 8, 2022) ("We defer to that ruling under AEDPA even though the state court addressed the merits of the prosecutorial-misconduct claims only in the course of resolving the prejudice prong of *Strickland*.  *See Goode v. Carpenter*, 922 F.3d 1136, 1159-60 (10th Cir. 2019)."); *see also Smith v. Duckworth*, 824 F.3d 1233, 1242 ("[Petitioner] raises three separate challenges to the application of Oklahoma's procedural bar to this claim, but we need not address those challenges because we elect to proceed directly to the merits.").  *Goode* does not create Tenth Circuit precedent holding that the OCCA necessarily relied on application of federal law for its application of a state procedural bar.  Nor does Petitioner's reliance on *Sullivan v. Wilson*, 673 F. App'x 855, 858 (10th Cir. 2016), support his argument as that case involved a Wyoming statute with language not found in the Oklahoma statutory procedural bar.  Neither of these cases convinces the Court that the OCCA considered the underlying merits of Petitioner's ineffective assistance of post-conviction counsel claim to an extent that rendered the procedural bar dependent on federal law.

23

*Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Petitioner claims that his prior counsel's ineffectiveness qualifies as cause to overcome the procedural bar.[11]

The Supreme Court has held that attorney error can constitute cause if the attorney's performance was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).  *Coleman*, 501 U.S. at 752.  However, a procedurally defaulted ineffective assistance of appellate counsel claim may not be relied on to establish cause to excuse default on a barred ineffective assistance of trial counsel claim, unless the petitioner can overcome the procedural bar on the ineffective appellate counsel claim.  *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).  Petitioner attempts to overcome the procedural bar on his ineffective appellate counsel claim by arguing that the procedural bar was not "sufficiently adequate or independent."  Petitioner's Supp. Br. at 22.  As discussed above, however, Tenth Circuit precedent precludes a finding in Petitioner's favor.  Accordingly, the Court concludes that Petitioner has not shown cause to overcome the procedural default on his ineffective assistance of trial counsel claims.

c.    *Atkins* Claim

Petitioner brings additional challenges to the procedural bar precluding review of his claim that trial counsel ineffectively litigated his *Atkins* hearing motion.

---

[11] Petitioner's argument refers to "prior counsel's omission of the [ineffective assistance of trial counsel] claims" Petitioner's Supp. Br. at 22 (citing Petition at 84, which references both appellate and post-conviction counsel).  To the extent Petitioner intends to rely on ineffective assistance of post-conviction counsel to support his argument, errors on the part of post-conviction counsel cannot serve as cause to excuse a procedural default.  *Davila v. Davis*, 582 U.S. 521, 524 (2017); *Cuesta-Rodriquez v. Carpenter*, 916 F.3d 885, 903-05 (10th Cir. 2019).

24

i.     Fundamental Miscarriage of Justice

First, Petitioner asserts that this Court should excuse the procedural default because failure to consider this claim will result in a fundamental miscarriage of justice as he is intellectually disabled and, therefore, innocent of the death penalty.  The miscarriage of justice exception "applies to those who are actually innocent of the crime of conviction and those 'actually innocent' of the death penalty (that is, not eligible for the death penalty under applicable law)." *Black v. Workman*, 682 F.3d 880, 915 (10th Cir. 2012).  To prevail on a claim of actual innocence of the death penalty, Petitioner "'must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him eligible for the death penalty under applicable state law.'" *Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992) (alteration incorporated)).  This "very narrow exception" applies to "actual or factual innocence, as opposed to legal innocence." *Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995).  In a capital sentencing context, this requires a defendant to "show the absence of aggravating circumstances or some other condition of eligibility." *Black*, 682 F.3d at 915.  Even assuming that, as Petitioner argues, a showing of intellectual disability equates to a showing that "some other condition of eligibility has not been met," given the denial of Petitioner's intellectual disability claim, *see* discussion *supra*, the Court finds that the miscarriage of justice exception is not satisfied. *Sawyer*, 505 U.S. at 344.

ii.     Adequate and Independent State Procedural Bar

In addition to determining that Petitioner's claim that his trial counsel ineffectively litigated his intellectual disability claim was procedurally barred under Okla. Stat. tit. 22,

25

§ 1089(D)(8), the OCCA also found the claim was barred under OCCA Rule 9.7(G)(3). *Fuston SAPCR*, at 10. Petitioner asserts that the Rule is an inadequate state procedural bar. However, the Court finds it unnecessary to address Petitioner's argument because, even if the Court were to agree that the Rule is inadequate, such determination would not change the fact that this claim would remain procedurally barred under Okla. Stat. tit. 22, § 1089(D)(8). *See* discussion *supra*.

Petitioner further argues that in applying § 1089 to this claim, the OCCA considered the merits of the claim, thus rendering the bar dependent on federal law. In support of this argument, Petitioner cites to the OCCA's discussion in which the OCCA concluded the claim did "not support a conclusion either that the outcome of the trial would have been different but for prior counsels' omissions or that Petitioner is factually innocent." Petitioner's Supp. Br. at 29 (quoting *Fuston SAPCR*, at 10 (alteration omitted)). Petitioner contends that the OCCA's determination that the outcome of the trial would not have been different necessarily required application of federal law. But, again, as discussed above, Tenth Circuit precedent precludes a finding in Petitioner's favor. *See e.g., Black v. Tram[m]ell*, 485 F. App'x 335, 335-37 (10th Cir. 2012) (rejecting an independence challenge after certification of a question to the OCCA). Moreover, this discussion occurred after the OCCA had already determined that Petitioner's claim was procedurally barred because it could have been raised earlier in either the direct appeal or the first post-conviction appeal. *Fuston SAPCR*, at 9-10. The OCCA then "[f]urther" observed that Petitioner's claim also did not meet additional requirements under the statute, which are only applicable when the claim could not have been presented previously. *Fuston SAPCR*,

at 10.  But as the OCCA had already determined Petitioner did not meet the first statutory requirement, this discussion of the second requirement was not a prerequisite to applying the procedural bar.  Accordingly, the OCCA's discussion did not make the bar, as applied on this claim, dependent on federal law.  *See Black*, 682 F.3d at 919 n.12 ("The essential inquiry is whether the state court must resolve the merits of a federal-law claim before holding that the claim is procedurally barred.").

d.   <u>Conclusion</u>

For the foregoing reasons, the Court rejects Petitioner's challenge to the OCCA's determination that a procedural bar precluded merits review of certain subparts of his ineffective assistance of counsel claim.  Petitioner also has not demonstrated sufficient cause to overcome the imposition of a procedural bar to the *Atkins* portion of his ineffective assistance of counsel claim and the Court concludes that it is procedurally barred.

2.   *Subclaim That Is Not Procedurally Barred*

One of Petitioner's ineffective assistance of counsel subclaims was properly exhausted and Petitioner now brings that claim before this Court, arguing that trial counsel was ineffective for failing to discover and present impeachment facts relevant to prosecution witness Ivan Williamson, and that the OCCA's rejection of the claim was an unreasonable application of *Strickland*, 466 U.S. 668.

a.   <u>Clearly Established Law</u>

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must show both that (1) "counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.   On habeas review,

courts must apply the highly deferential standards of *Strickland* and AEDPA to the facts of the case and decide whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  A state court's ruling cannot be disturbed unless the petitioner demonstrates that the state court applied the highly deferential *Strickland* test in a way that every fair-minded jurist would agree was incorrect.  *Id*.

Regarding deficient performance, the Supreme Court has shunned "specific guidelines" and instead held that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Of course, whether an attorney's conduct is reasonable will depend on the facts of the particular case.  *Id.*  To avoid the "distorting effects of hindsight," an attorney's conduct should be judged "from counsel's perspective at the time" and review of an attorney's performance is a highly deferential one, where "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90.

In addition to deficient performance, the petitioner must also show prejudice. Prejudice exists where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome," which "requires a substantial, not just conceivable, likelihood of a different result." *Id.*; *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks omitted).

b.   Analysis

Petitioner describes Williamson as "a key cooperating witness[]" and argues that counsel's failure to uncover Williamson's plea to federal charges was a deficiency that prejudiced his defense.  Petition at 83.  Addressing the merits of the claim, the OCCA concluded that Petitioner "ha[d] not shown trial counsel to be ineffective" under the standard set forth in *Strickland*.  *Fuston DA*, 470 P.3d at 332.  This conclusion is not unreasonable.

With respect to whether counsel was deficient in failing to research and find Williamson's federal charges and related plea agreement, in considering Petitioner's *Brady* claim, *see* discussion *infra*, the OCCA noted that trial counsel had requested "all agreements between the State and its witnesses reflecting any special or lenient treatment in exchange for their testimony." *Fuston DA*, 470 P.3d at 321.  There is no allegation that the requested information had not been provided, and Petitioner specifically stated in his direct appeal briefing that trial counsel knew of charges filed against Williamson in Pushmataha County.  *Id.* at n.5. Additionally, at trial, Williamson testified that he was appearing "pursuant to a plea agreement with the Garfield County prosecutor where he would receive leniency in connection with his case in Garfield County." *Id.* at 321-22.  As such, trial counsel already had – and relied on – evidence it could use to impeach Williamson for bias; further investigation for the same purpose was unnecessary. *Id.*; Trial Tr. Vol. V at 1213-15; *see Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to

29

investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").  Despite Petitioner's arguments that trial counsel "should have uncovered" information about Williamson's federal plea, he has not shown that no fairminded jurist could agree with the OCCA's determination that his trial counsel was not ineffective under *Strickland*.  Petition at 83.  Accordingly, Petitioner has not shown it was unreasonable for the OCCA to conclude under the first prong of the *Strickland* standard that Petitioner's counsel was not deficient.

As Petitioner is unable to obtain relief on the deficiency prong of the *Strickland* standard, it is unnecessary to consider the prejudice prong.  *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.").

### c.   Conclusion

The OCCA's determination that Petitioner had not shown trial counsel to be constitutionally ineffective was reasonable.  Petitioner is not entitled to relief regarding counsel's failure to discover and present evidence regarding Ivan Williamson's federal charges.

### C.   Ground Three:  Insufficient Evidence for Malice Aforethought Murder Conviction

On direct appeal, Petitioner argued that the State presented insufficient evidence to support his conviction for malice aforethought murder, asserting there was no evidence establishing that Petitioner was the person who fired the lethal shot, other than the

uncorroborated testimony of Brian Butler who did not witness the murder.  Direct Appeal

Brief at 80-83; *Fuston DA*, 470 P.3d at 328.  The OCCA determined that "[w]hile none of

the testifying witnesses observed the actual murder, sufficient evidence was presented from

which the jury could reasonably infer [Petitioner] shot and killed the decedent," concluding

that "[t]he evidence was sufficient for any rational trier of fact to find [Petitioner] guilty of

first degree malice murder." *Fuston DA*, 470 P.3d at 328.[12]

Petitioner claims under 28 U.S.C. §2254(d)(1) that, in reaching this conclusion, the

OCCA unreasonably applied *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the applicable

---

[12] The OCCA set forth the standard for reviewing sufficiency of the evidence as follows:

> We review [Petitioner's] challenge to the sufficiency of the evidence in the light
> most favorable to the prosecution to determine whether any rational trier of fact
> could have found the essential elements of the crime charged beyond a reasonable
> doubt. *Mitchell*, 2018 OK CR 24, ¶ 11, 424 P.3d at 682.  In reviewing sufficiency
> of the evidence claims, this Court does not reweigh conflicting evidence or second-
> guess the decision of the fact-finder; we accept all reasonable inferences and
> credibility choices that tend to support the verdict. *Id*.  The credibility of witnesses
> and the weight and consideration to be given to their testimony are within the
> exclusive province of the trier of facts.  *Rutan v. State*, 2009 OK CR 3, ¶ 49, 202
> P.3d 839, 849.

*Fuston DA*, 470 P.3d at 327-28.  Petitioner argues that the OCCA's statement that it "does not . . .
second-guess the decision of the fact-finder" "critically misstated its role."  Petition at 88.  The
Court disagrees.  The OCCA paraphrased *Mitchell v. State*, 424 P.3d 677, 682 (Okla. Ct. Crim.
App. 2018), which more fully stated the standard as "[t]his Court does not . . . second-guess the
fact-finding decisions of the jury . . . ."  Moreover, in its decision, the OCCA did review the jury's
decision as required under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and applied the proper
standard.  Thus to the extent Petitioner intended to bring a claim that the OCCA's decision was
contrary to clearly established law under § 2254(d)(1), the claim fails.  *Cf. Andrew v. White*, 62
F.4th 1299, 1328-29 (10th Cir. 2023) (noting that when the OCCA stated the proper standard of
review, a later incomplete recitation of the standard "does little to rebut 'the presumption that state
courts know and follow the law,'" and attributing error to the statement "would be 'incompatible
with § 2254(d)'s highly deferential standard for evaluating state-court rulings, which demands that
state-court decisions be given the benefit of the doubt.'" (quoting *Woodford v. Visciotti*, 537 U.S.
19, 24 (2002))).

Supreme Court law.  Petitioner also claims under 28 U.S.C. § 2254(d)(2) that the OCCA unreasonably determined facts in light of the record.

        *1.*    *Discussion*

              a.    <u>Section 2254(d)(1)</u>

                    i.    <u>Clearly Established Law</u>

To determine whether evidence is sufficient to support a criminal conviction, courts ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  This question, which focuses less on whether the jury's determination was correct than on whether it was rational, is a "highly deferential approach to the jury's verdict." *Meek v. Martin*, 74 F.4th 1223, 1252-53 (10th Cir. 2023).

In addition, on habeas review, this Court must consider the OCCA's assessment of the jury's verdict through "AEDPA's deferential prism," asking whether OCCA's application of the *Jackson* standard was objectively unreasonable. *Id.*  This is a mixed question of law and fact, governed by 28 U.S.C § 2254(d)(1) and (d)(2), and the Court must therefore presume that the OCCA's factual determinations are correct unless the petitioner rebuts that presumption by clear and convincing evidence. *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006); 28 U.S.C. § 2254(e)(1).  On the legal question, the Court cannot overturn the OCCA's sufficiency determination unless that decision is objectively unreasonable. *Parker v. Matthews*, 567 U.S. 37, 43 (2012).  The Supreme Court has described this standard as "twice-deferential." *Id*.

ii.   <u>Analysis</u>

In convicting Petitioner of malice aforethought murder, the State was required to prove the following elements under Oklahoma law:  (1) the death of a human; (2) the death was unlawful; (3) the death was caused by the defendant; and (4) the death was caused with malice aforethought.  Orig. Rec. Vol. XI at 2171.  Petitioner challenges the OCCA's decision on the third element – that the death was caused by him.

As part of the sufficiency-of-the-evidence inquiry, a court looks at "both direct *and* circumstantial evidence" and causation may be proven by circumstantial evidence.  *Meek*, 74 F.4th at 1252, 1254; *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).  Petitioner argues that the witness testimony relied on by the OCCA and by the jury was "incentivized," Petition at 86, but it is not the role of a federal habeas court to consider the credibility of the witnesses.  *E.g., Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996); *cf. Matthews*, 567 U.S. at 43 ("[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." (internal quotation marks omitted)).  Rather, the habeas court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason."  *Messer*, 74 F.3d at 1013 (internal quotation marks omitted).

And Petitioner has not shown that the OCCA was unreasonable in accepting the jury's resolution of the evidence provided by Butler, including that Petitioner routinely carried the same type of pistol as the murder weapon; Petitioner had the gun when they drove to and after they left the decedent's home; Petitioner drove to the murder scene but ensured someone was sitting in the driver's seat of his vehicle when he went to the

decedent's house; the intent in going to the decedent's house was to kill everyone there; Petitioner admitted that he shot the decedent multiple times because he moved; and Petitioner changed his cell phone number after the murder.  *See* Petition at 86; Reply at 25; Trial Tr. Vol. V at 1031-56.  Nor has Petitioner shown the OCCA was unreasonable in accepting the jury's resolution of the other evidence upon which it relied and which corroborated Butler's testimony, including that it was determined that the decedent's wounds were consistent with having been shot while the decedent was moving; Petitioner routinely carried same the type of pistol as the murder weapon; shell casings found at the scene were determined to have been fired from the pistol Petitioner used; Petitioner sought help from his friends in disposing of the gun that was determined to be the murder weapon; cell phone records placed Petitioner's phone in the vicinity of the murder scene at the time of the murder; and Petitioner changed his cell phone number after the murder.  *See Fuston DA*, 470 P.3d at 328.

Disregarding Butler's testimony that Petitioner confessed to the murder, Petitioner argues the OCCA erred in relying on inferences that Petitioner was at the scene in order to conclude that he was the actual shooter.  But even as to the inferences drawn from the evidence presented at trial, "[w]hen considering the sufficiency of the evidence and faced with a record of facts that supports conflicting inferences, [a court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and . . . must defer to that resolution." *Meek*, 74 F.4th at 1260 (internal quotation marks omitted, alterations incorporated).  Viewing the evidence in the light most favorable to the prosecution, the OCCA did not unreasonably apply the

*Jackson* standard in concluding that a rational jury could find Petitioner guilty beyond a reasonable doubt as to the element of causation.

> b.    Section 2254(d)(2)

> > i.    Clearly Established Law

Section 2254(d)(2) allows habeas relief if a state court's decision is based on an unreasonable determination of fact.  This standard encompasses two elements that create a high hurdle for relief.  First, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1).  And even if the petitioner successfully rebuts the presumption of correctness, a state court's factual conclusions must be more than incorrect or inconsistent with the conclusions the federal habeas court might reach.  Instead, the state court's conclusions must be "objectively unreasonable."  *Miller-El*, 537 U.S. at 340.  "[A] factual determination only qualifies as unreasonable under § 2254(d)(2) if all 'reasonable minds reviewing the record' would agree it was incorrect."  *Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018) (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (alteration incorporated)).

Second, even if a state court's factual finding is shown to be objectively unreasonable, relief is only available if the state court's legal decision was "*based on*" that erroneous factual conclusion.  *Id*. (internal quotation marks omitted).  If a state court only "*included* an unreasonable factual determination," § 2254(d)(2) is not satisfied.  *Id*.  And as with § 2254(d)(1), showing that the state court's decision was based on an unreasonable determination of facts only allows the federal court to engage in *de novo* review, it does

not result in automatic habeas relief.  *See Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019).

ii.   <u>Analysis</u>

In arguing that the OCCA unreasonably determined facts in light of the record, Petitioner presents arguments intended to show the record did not directly support two of the OCCA's factual determinations:  (1) that Petitioner kicked open the front door of the decedent's home and (2) that Petitioner was in the possession of the murder weapon when he returned to the car.  Petitioner does not cite to conflicting evidence, but only to a lack of direct evidence.  But argument that there is a lack of direct evidence does not provide clear and convincing evidence to overcome the factual determinations or show that the OCCA's plausible determinations based upon indirect evidence in the record were unreasonable. *See Frederick v. Quick*, 79 F.4th 1090, 1104 (10th Cir. 2023) ("An imperfect or even an incorrect determination of the facts isn't enough for purposes of § 2254(d)(2)." (internal quotation marks omitted, alteration incorporated)); *id.* at 1128 n.26 (noting that "where there are a number of plausible ways to interpret the record, a federal habeas court's disagreement with the inferences the state court drew from the record is not sufficient to reverse its findings if the state court's interpretation is plausible" (internal quotation marks omitted, alteration incorporated)).

Moreover, obtaining relief under § 2254(d)(2) requires a determination that the objectively erroneous factual finding "goes to a material factual issue that is central to the petitioner's claim." *Id.* at 1104 (quoting *Menzies v. Powell*, 52 F.4th 1178, 1195 (10th Cir. 2022)).  Here, the challenged factual determinations did not go to a material factual issue

36

that was central to Petitioner's claim.  While they may have nominally bolstered the OCCA's analysis, the OCCA relied on multiple other factual determinations that Petitioner does not challenge, including that Petitioner drove to the murder scene but ensured someone was sitting in the driver's seat of his vehicle when he went to the decedent's house; he fired into the house multiple times; he admitted that he shot the decedent multiple times because he moved and it was later determined that the decedent's wounds were consistent with having been shot while the decedent was moving; he routinely carried same the type of pistol as the murder weapon; shell casings found at the scene were determined to have been fired from the pistol he used; cell phone records placed his phone in the vicinity of the murder scene at the time of the murder; and actions he took shortly after the murder, including disposing of his pistol and changing his phone number, were indicative of a consciousness of guilt.  *Fuston DA*, 470 P.3d at 328.

> ### 2. *Conclusion*

The OCCA reasonably concluded that there was sufficient evidence to convict Petitioner of malice aforethought murder, and its conclusion was not based on an unreasonable determination of the facts.  Relief is denied on Ground Three.

### D. **Ground Four:  Lesser Included Offense**

In Ground Four, Petitioner argues that the trial court's failure to instruct the jury on a lesser included offense violated the Fourteenth Amendment of the United States Constitution.

*1.      Discussion*

      a.      <u>Section 2254(d)(1)</u>

          i.      <u>Clearly Established Law</u>

In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court addressed the constitutional ramifications of lesser-included instructions for a capital crime.  Prior to *Beck*, the Supreme Court had "never held that a defendant is entitled to a lesser included offense instruction as a matter of due process."  *Beck*, 447 U.S. at 637.  In *Beck*, however, the Supreme Court carved out an exception for those high-stakes cases where the death penalty is a possible punishment.

> For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense – but leaves some doubt with respect to an element that would justify conviction of a capital offense – the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.
>
> Such a risk cannot be tolerated in a case in which the defendant's life is at stake. As we have often stated, there is a significant constitutional difference between the death penalty and lesser punishments . . . .

*Id. Beck*, therefore, requires a trial court in a capital case to give the jury a third option to convict the defendant for a lesser-included non-capital offense, when such lesser offense is supported by the evidence.  *Id.* at 627.[13]

---

[13] The State argues that *Beck* is not clearly established law in Oklahoma.  This Court is bound by Tenth Circuit precedent holding that it is.  *See, e.g., Grissom v. Carpenter*, 902 F.3d 1265, 1284 (10th Cir. 2018) ("The clearly established federal law applicable to Grissom's claim that the state trial court violated his constitutional rights by failing to instruct the jury on lesser-included offenses is outlined in the Supreme Court's decision in *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).").

ii.   <u>Analysis</u>

During his trial, Petitioner's trial counsel twice requested the trial court instruct the jury as to the lesser included offense of second-degree depraved mind murder in addition to the instruction on first degree malice aforethought murder.  Trial Tr. Vol. VII at 1643, 1654-55.  Both times, the court refused.  *Id.* at 1644, 1656.  On direct appeal, the OCCA determined that Petitioner's federal due process rights were not violated by the trial court's refusal.  *Fuston DA*, 470 P.3d at 325.  Specifically, the OCCA considered whether instruction on the lesser included offense was required under *Beck* and concluded it was not because there was no evidence presented at trial that showed Petitioner "engaged in imminently dangerous conduct in extreme disregard for human life *without* the intent of taking the decedent's life."  *Id*.

Petitioner asserts under § 2254(d)(1) that the OCCA unreasonably applied *Beck* because the court "focused solely on evidence supporting its conclusion of intent" and failed to look for "evidence a reasonable juror might interpret as that of a depraved mind." Petition at 96.  The Court disagrees with Petitioner's assertion.

After reviewing the record and citing specific factual determinations, the OCCA concluded that evidence showed Petitioner's premeditated intent to kill "anyone behind [decedent's] front door."  *Fuston DA*, 470 P.3d at 325.  But the OCCA did not limit its analysis of Petitioner's *Beck* claim to the sufficiency of the evidence supporting the first degree murder conviction.  Instead, having specified that second degree depraved mind murder is only applicable when there is an imminently dangerous act perpetrated "without any premeditated design to effect the death of any particular individual," *id*. (citing Okla.

39

Stat. tit. 21, § 701.8(1)), the OCCA continued its review of the record to determine whether there was evidence showing Petitioner acted without the intent of taking the decedent's life.  The OCCA then determined there was none.  *Id.*

As such, the OCCA properly considered whether the evidence presented at trial was sufficient to support a conclusion that Petitioner had acted without the intent of taking the life of any particular individual and, thus, was sufficient to support a verdict of second degree depraved mind murder.  *See Grant v. Trammell*, 727 F.3d 1006, 1015 n.3 (10th Cir. 2013) (explaining that, even though the OCCA commented on the sufficiency of the government's case to sustain a first degree conviction, its holding that the evidence did not support a finding that the petitioner acted without a premeditated design to effect death foreclosed a *Beck* claim).  And in considering this question, the OCCA determined that "[a] review of the record shows [Petitioner] did not present any evidence, nor did the State's case provide any, that showed he engaged in imminently dangerous conduct in extreme disregard for human life *without* the intent of taking the decedent's life."  *Fuston DA*, at 325.  Thus, the OCCA determined there was not sufficient evidence to support a second degree depraved mind murder conviction.  *See Grant*, 727 F.3d at 1014 ("Under Oklahoma law, a second degree murder conviction is permissible only when the defendant acts without *any* premeditated design to effect the death of any particular individual." (internal quotation marks omitted)); *Williams v. Trammell*, 539 F. App'x 844, 853 (10th Cir. 2013) ("[A]n instruction on [second degree depraved mind murder] demands evidence that the defendant did not intend to kill the victim." (internal quotation marks omitted)).  *Cf. Williams*, 539 F. App'x at 850-51 (determining the OCCA did not properly apply *Beck*

40

when it ruled that an instruction on second degree murder was not warranted *because* the evidence supported the conviction of first degree murder, without addressing whether there was evidence that would support a second degree murder instruction); *Phillips v. Workman*, 604 F.3d 1202, 1213-14 (10th Cir. 2010) (under de novo review, citing to specific facts that supported a finding of lack of intent).

*Beck* does not require more than the OCCA's inquiry into whether the evidence would support the lesser-included offense. And Petitioner's argument that "[h]ad the state court looked to whether . . . there was evidence a reasonable juror might interpret as that of a depraved mind, the court would have found sufficient evidence warranting a lesser included instruction," Petition at 96, does not establish that every fairminded jurist would disagree with the OCCA's conclusion regarding that very question.

b.      Section 2254(d)(2)

Petitioner further asserts that the OCCA unreasonably determined the facts under § 2254(d)(2). Petitioner challenges the OCCA's interpretation of the following facts: that shots were fired almost simultaneously as the door being kicked open, that the decedent "just so happened to be sitting on the couch near the front door" while the alleged target was not even at the decedent's home, and that Petitioner admitted that he shot the decedent multiple times because he moved – arguing those facts could be interpreted differently by various jurors. Petition at 98 (internal quotation marks omitted). Petitioner's argument, however, takes issue with the OCCA's analysis of and reliance upon the factual determinations, rather than with the determinations themselves. *See* Petition at 98-99 (arguing the proper *Beck* inquiry requires a different analysis of the various factual

41

determinations because they could have supported either first degree or second degree murder).  As such, Petitioner is not entitled to relief under § 2254(d)(2).

>    2.    *Conclusion*

Because Petitioner has not shown that the OCCA was unreasonable in its determination that a lesser offense was not supported by the evidence, and has not shown that the OCCA unreasonably determined facts in light of the record,  habeas relief is denied on Ground Four.

**E.    Ground Five:  Impermissible Jury Selection; Ground Six:  Failure to Correct Testimony**

In Ground Five, Petitioner argues the State violated the Fourteenth Amendment by impermissibly using race to select the jury in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).  In Ground Six, Petitioner argues the State violated the Fourteenth Amendment by failing to correct the false testimony of a key witness in violation of *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  However, Petitioner did not raise these arguments before the state courts until his SAPCR and the OCCA determined they were procedurally barred under Okla. Stat. tit. 22, § 1089 as the claims were "based solely on the trial record,"  did "not turn on facts unknown or unavailable at the time of his previous appeals," and "were clearly available and could have been raised in previous appeals."  Petition at 100 n.80, 106 n.82; *Fuston SAPCR*, at 13-14.  In support of his assertion that this Court can nonetheless consider the claims, in his supplemental briefing Petitioner reasserts his argument that § 1089 is not an adequate and independent bar.  As set forth above, this Court is obliged to follow the Tenth Circuit's rulings and conclude that Petitioner's arguments do not

undermine the adequacy or independence of Oklahoma's procedural rule. *See* discussion *supra*. Accordingly, the Court is precluded from considering these claims as they are procedurally barred.

### F.    Ground Seven:  Favorable Impeachment Evidence

In Ground Seven, Petitioner argues that the State failed to disclose information about Ivan Williamson, one of the prosecution's cooperating witnesses. The defense was aware the Williamson had received leniency on a state charge in exchange for his trial testimony, but the State did not disclose that Williamson was also indicted on, and pled guilty to, unrelated federal charges right before Petitioner's trial. Petitioner contends the State's failure to disclose this impeachment evidence violated his Fourteenth Amendment rights as set forth in *Brady v. Maryland*,  373 U.S. 83 (1963).

In addition, Petitioner also points to at least one undisclosed meeting between a State investigator and Brian Butler. Petitioner seeks additional information relating to that meeting, noting that without that information "he cannot allege materiality, but includes it for preservation as a potential *Brady* violation." Petition at 108.

#### 1.    Discussion

Petitioner presented the argument regarding Williamson on direct appeal and the OCCA denied the claim on both suppression and materiality grounds. *Fuston DA*, 470 P.3d at 322. Petitioner now urges this Court to find under 28 U.S.C. § 2254(d)(1) that the OCCA unreasonably applied *Brady* and its progeny, and under § 2254(d)(2) that the OCCA unreasonably determined facts in light of the record.

a.    Section 2254(d)(1)

i.    Clearly Established Law

The Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  373 U.S. at 87.  To prevail on a *Brady* claim, the proponent must show that (1) the prosecution suppressed evidence; (2) the suppressed evidence was favorable to the accused, either because it is exculpatory or because it is impeaching; and (3) prejudice ensued because the suppressed evidence was material. *Andrew v. White*, 62 F.4th 1299, 1327 (10th Cir. 2023).  "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

ii.    Analysis

The Court first addresses Petitioner's argument that the OCCA was unreasonable in determining that Petitioner had not shown that information regarding Williamson's federal charges was material.  Petitioner has not convinced this Court that every fairminded jurist would reach a different conclusion.  As the OCCA discussed, the jury heard Williamson's testimony that he was testifying against Petitioner in exchange for leniency in a Garfield County case.  *Fuston DA*, 470 P.3d at 322; Trial Tr. Vol. V at 1213-15.  Thus, the jury knew Williamson had an incentive to testify at Petitioner's trial.  But Petitioner argues that knowledge of Williamson's plea to the federal charges "could have swayed the jury as to

44

Williamson's incentivized testimony and subsequent lack of credibility to a different degree than his initial cooperation agreement."  Petition at 113.

The OCCA determined that Petitioner provided "no support" for his assertion that Williamson received additional benefit in connection with any pending federal charges. *Fuston DA*, 470 P.3d at 322.  The OCCA further discussed that, even if Petitioner had provided support for his claim that Williamson received additional benefit,

> it is not clear how that would have impacted Williamson's credibility with the jury.  They knew he had pending criminal charges and had made a deal with the State in exchange for testimony.  His testimony connecting [Petitioner] to the murder weapon was corroborated by numerous witnesses and a photograph of [Petitioner] with the gun.  Williamson's testimony that he ultimately sold the gun was corroborated by the purchaser Oakley who turned the gun over to law enforcement.  This trial testimony was consistent with Williamson's preliminary hearing testimony.  [Petitioner] offers no explanation as to how the absence of any information regarding any pending federal charges contributed to Williamson fabricating any of his testimony.  There was no reasonable probability that [Petitioner] would have been acquitted if the jury knew Williamson had additional pending federal charges.

*Id.*

For undisclosed evidence involving credibility to be material, the witness must be "absolutely critical to the government's case," *United States v. Cooper*, 654 F.3d 1104, 1123 (10th Cir. 2011), yet, as the OCCA discussed, Williamson's testimony was corroborated by other evidence and, thus, any additional impeachment of his testimony would not have significantly undermined the State's case.  Further, evidence is not material when it bears only an insignificant effect on the impeachment evidence.  *Id.* at 1120 ("[W]here the credibility of a witness has already been substantially called into question in the same respects by other evidence, additional impeachment will generally be immaterial

and will not provide the basis for a *Brady* claim." (internal quotation marks omitted));
*accord Douglas v. Workman*, 560 F.3d 1156, 1174 (10th Cir. 2009); s*ee also United States
v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998) (noting "an incremental amount of
impeachment evidence on an already compromised witness does not amount to material
evidence"). And here, as discussed, there was already significant impeachment evidence
against Williamson.

While Petitioner is correct that it was not necessary for him to show specifically that
any assumed additional leniency would have resulted in "Williamson fabricating any of his
testimony,"[14] Petitioner has not shown that the OCCA was unreasonable in determining
that, even had there been additional leniency, it would not have "impacted Williamson's
credibility with the jury" or that information regarding the plea would have otherwise
impeached Williamson's testimony to an extent that would undermine confidence in the
verdict. *Fuston DA*, 470 P.3d at 322. The OCCA determined that, even if the jury had
been aware of Williamson's plea to the federal charges, there was "no reasonable
probability" that the outcome of the trial would have been different. *Fuston DA*, 470 P.3d

---

[14] Petitioner argues that the OCCA's application of the *Brady* materiality standard was
unreasonable in part because it "invent[ed]" the test that Petitioner need explain how undisclosed
information "contributed to Williamson fabricating any of his testimony." Petition at 112 (quoting
*Fuston DA*, 470 P.3d at 322). But the OCCA's analysis and determination that there was no
reasonable probability the information would have caused the result of his trial to differ
demonstrates that the OCCA applied the correct standard. The Court will not attribute error to the
OCCA's decision on this issue as to do so would be incompatible with both "the presumption that
state courts know and follow the law" and AEDPA's "demand[] that state-court decision be given
the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

at 322.[15]  Petitioner has not shown that every fairminded jurist must disagree with the OCCA's materiality determination.  Indeed, Petitioner has only argued that information about the federal charges "could have swayed the jury," but does not provide adequate argument as to how a belief that Williamson's testimony was more incentivized than was already known would have put the entire case in such a different light as to create a reasonable probability that the outcome of the trial would have been different.  *See Kyles*, 514 U.S. at 434-35.

Accordingly, relief is not available on the OCCA's determination of materiality. And because Petitioner has not shown that the evidence was material, his *Brady* claim fails and it is not necessary for this Court to consider his arguments regarding suppression.  *See Simpson v. Carpenter*, 912 F.3d 542, 571-72 (10th Cir. 2018) (noting a successful *Brady* claim requires both prongs and denying *Brady* claim on the basis of lack of materiality even assuming petitioner could show suppression).

b.    Section 2254(d)(2)

Petitioner's first argument that the OCCA unreasonably determined facts in light of the record goes to Petitioner's suppression argument, which, as stated above, the Court declines to address.

---

[15] Petitioner argues that the OCCA's determination that there was "no reasonable probability that [Petitioner] would have been acquitted if the jury knew Williamson had additional pending federal charges" was an unreasonable application of Supreme Court law because the *Brady* standard is that of a reasonable probability of a different result.  However, at the beginning of its discussion of Petitioner's *Brady* claim, as well as during the discussion itself, the OCCA cited its standard as whether there was a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different.  *Fuston DA*, 470 P.3d at 322.  The Court will not ascribe error to the OCCA's decision based on this single statement.  *See Visciotti*, 537 U.S. at 24.

Petitioner's second argument is that the OCCA's "refusal to allow development" of his *Brady* claim can "surmount § 2254(d)(2) deference," contending that failure to offer support for his argument that Williamson received additional benefit from his federal plea was the result of having been denied the opportunity to develop factual evidence. Petition at 114. He asserts that the OCCA's unreasonable refusal to permit him to further develop the record rendered its fact-finding so deficient as to either satisfy the stringent standards of § 2254(d)(2) or result in a conclusion that there was no adjudication on the merits. The Court disagrees.

Petitioner focuses on the OCCA's statement that he "offers no support for his argument that Williamson 'continued to benefit," received, or expected to receive additional leniency in connection with any pending federal charges." Petition at 114 (quoting *Fuston DA*, 470 P.3d at 322). The OCCA, however, made its materiality determination even assuming there was support for Petitioner's claim. *Fuston DA*, 470 P.3d at 322 ("Even if there was support for [Petitioner's] claim that Williamson was expecting lenience in the additional federal cases . . . ."). As such, the OCCA did not rely on its determination that Petitioner had offered no support and, thus, Petitioner's arguments are unpersuasive. Petitioner has not met the standards of § 2254(d)(2) nor has he demonstrated that the OCCA did not adjudicate his *Brady* claim on the merits.

### c.   Additional Potential Brady Violation

In his Petition, Petitioner seeks to preserve a potential *Brady* subclaim relating to a meeting between an investigator with the Oklahoma County District Attorney and Brian Butler. Petitioner argues that the State did not disclose the fact that this meeting occurred,

thus giving rise to a potential *Brady* violation. This potential *Brady* claim was not presented to the OCCA on either direct appeal or Petitioner's application for post-conviction relief, but Petitioner raised it in his SAPCR. Petition at 108 n.83. The OCCA denied him discovery on the meeting and determined the claim was procedurally barred. *Fuston SAPCR*, at 14-15. In his supplemental briefing, Petitioner asserts that he did not fail to develop the factual basis of the claim and, in the alternative, that he can show cause and prejudice for his failure to develop the facts of the claim.

i.    Section 2254(e)(2)

Petitioner first argues that he did not fail to develop the factual basis of this claim and, therefore, is not within the confines of 28 U.S.C. § 2254(e)(2), which mandates that if a federal habeas petitioner has failed to develop the factual basis of a claim in state court proceedings, the federal court may not grant an evidentiary hearing on the claim unless the petitioner's case meets the statutory conditions for excusing the deficiency. Petitioner asserts that he "more than 'made a reasonable attempt, in light of the information available at the time, to investigate and pursue his claims in state court,' by presenting the evidence he was able to uncover of a suppressed State meeting with its key witness and requesting an opportunity to develop his claim." Petitioner's Supp. Br. at 31 (quoting *Williams v. Taylor*, 529 U.S. 420, 435 (2000) (alteration incorporated)). The Court understands this to be a reference to Petitioner's presentation of an affidavit, *see* [Doc. No. 16-34] and *Fuston SAPCR*, at 15 n.3, and request for discovery to the OCCA in his SAPCR, as Petitioner did not present evidence or request discovery prior to that March 25, 2022, filing.

49

Petitioner asserts that, because the State suppressed evidence of the alleged meeting, he was prevented from developing the factual basis of the claim.  Specifically, throughout his filings, Petitioner repeatedly claims that Butler's testimony did not reference a meeting with an investigator and, therefore, he "could not have obtained this suppressed evidence through exercise of due diligence."  Motion for Evidentiary Hearing at 5-6; *see* Petition at 115; Petitioner's Supp. Br. at 34; *Fuston v. State*, PCD-2022-286, Subsequent Application for Post-Conviction Relief, Mar. 25, 2022 [Doc. No. 28-1] at 70; *see also* discussion *infra*. The Court's review of Butler's trial testimony, however, shows that he referenced a meeting that took place in Washington state at some point between the preliminary hearing and the trial, in which Butler "met up with an investigator out there" who "gave" Butler "an Oklahoma subpoena" issued by the Oklahoma County District Attorney's office ordering him to return to Oklahoma to testify in Petitioner's trial.  *Compare* Trial Tr. Vol. V at 1088-89, *with* [Doc. No. 16-34] (January 21, 2022, affidavit from investigator stating that Brian Butler "told me he had spoken with 'an older bald white male' investigator from the Oklahoma County District Attorney's office at some point prior to Mr. Fuston's trial").

In determining whether a petitioner "failed to develop" the factual basis of his claim,

> [t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts.  The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence.  Diligence for purposes of [§ 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.

*Williams*, 529 U.S. at 435.  Because Butler's trial testimony referenced a meeting with an investigator, Petitioner had sufficient notice at the time of direct appeal to prompt further

inquiry into any meetings Butler may have had with any investigator. Petitioner has not demonstrated that he made a reasonable attempt, in light of the information provided at trial, to investigate and pursue this claim in state court.[16] As such, even if Petitioner were able to show cause and prejudice to overcome the procedural bar, he would not be entitled to an evidentiary hearing on this matter. *See* 28 U.S.C. § 2254(e)(2); *Shinn v. Ramirez*, 596 U.S. 366, 381-83 (2022) (discussing when a prisoner is at fault for failure to develop the state court record).

ii.   <u>Cause and Prejudice</u>

Where a habeas petitioner has defaulted a claim, federal review is prohibited unless he can show both cause for the default and prejudice. *Simpson v. Carter*, 912 F.3d 542, 571 (10th Cir. 2018). In the *Brady* context, "cause and prejudice parallel two of the three components of the alleged *Brady* violation itself," thus if a petitioner successfully demonstrates cause and prejudice, he will have also succeeded in establishing his *Brady* claim. *Id*. (internal quotation marks omitted). Here, Petitioner asserts that cause is the State's suppression of the meeting between the investigator and Butler, and prejudice is the "possibl[ity]" and "potential" of exculpatory evidence relating to the State's "star witness." Petitioner's Supp. Br. at 32-33.

To establish cause, Petitioner must show that "some objective factor external to the defense" impeded his efforts to comply with the state procedural rule. *Murray v. Carrier*,

---

[16] The Court recognizes that Butler's testimony that he met with "an investigator" is not the same as if he had testified specifically to a meeting with the investigator from the Oklahoma County District Attorney's office at issue in this *Brady* claim. Nonetheless, his testimony clearly could have prompted inquiry into meetings with investigators.

477 U.S. 478, 488 (1986).   Such external factor may be, as alleged here, interference by officials that made compliance impracticable.   *See id.* (providing examples of external factors).   "In examining whether there is cause to excuse [the petitioner's] failure to raise this claim on direct appeal, [a court] must evaluate counsel's actions in light of the information counsel had, or reasonably could have had, at the time of the direct appeal." *Scott v. Mullin*, 303 F.3d 1222, 1228 (10th Cir. 2002).   Here, as previously discussed, counsel had Butler's trial testimony that he had met with an investigator.   *See* Trial Tr. Vol. V at 1088-89.   As such, this is not a situation in which the claim could not have been developed – or attempted to be developed – before the state court at the time of direct appeal.   Though "[i]t is not a petitioner's responsibility to uncover suppressed evidence," *Scott*, 303 F.3d at 1229, it is a petitioner's responsibility to be diligent in determining when claims are potentially available and to attempt to develop them.

Moreover, the OCCA determined this claim was procedurally defaulted because it found it could have been raised on direct appeal or in the first post-conviction application, which conclusion is based on a factual determination.   *See id.*   This fact is "presumed to be correct" and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).   Petitioner challenges the OCCA's determination that he had not "shown that the existence of any such meeting could not have been ascertained at an earlier date through the exercise of due diligence," arguing to both the OCCA and this Court that Butler's testimony did not reference a meeting with an investigator.   Petitioner's Supp. Br. at 32 n.5 (quoting *Fuston SAPCR*, at 15 (internal quotation marks omitted)), 34; Petition at 115; Motion for Evidentiary Hearing at 5-6;

*Fuston v. State*, PCD-2022-286, Subsequent Application for Post-Conviction Relief, Mar. 25, 2022 [Doc. No. 28-1] at 70. But Petitioner has not rebutted the presumption of correctness by clear and convincing evidence.

First, Petitioner fails to acknowledge that Butler's testimony did indeed reference a meeting with an investigator. *See* discussion *supra*. Second, he cites to various portions of testimony contending that information regarding the meeting was suppressed as it was not referenced in the testimony of either Butler or the Oklahoma County District Attorney's office investigator, despite the testimony of each regarding their other interviews. Petition at 115; Petitioner's Supp. Br. at 34; Petitioner's Supp. Reply at 11; Motion for Evidentiary Hearing at 5-6. Petitioner cites to a specific portion of Butler's testimony at the Preliminary Hearing, characterizing it as "the prosecution walked Mr. Butler through which State agents he had spoken with and when, never mentioning a meeting with an Oklahoma County District Attorney investigator," Petitioner's Supp. Br. at 34 (citing Preliminary Hearing Transcript (Prelim. Hrg. Tr.) Vol. I at 172-74); *see also* Petitioner's Supp. Reply at 11 ("the prosecution specifically elicited testimony from Butler about the timeline of his State contacts, which omitted reference to any conversation with an Oklahoma County District Attorney investigator"). However, this characterization is misleading as, on redirect, the prosecutor was responding to the defense's cross-examination asking Butler how many times he had "talked with police whether it's Enid or whether it's Oklahoma City about what happened with this case . . . [a]ny police officers" and the prosecutor specifically asked Butler about "the number of times that [he] talked with police." Prelim. Hrg. Tr. Vol. I at 127-28, 172; *id.* at 127-32, 172-74. The prosecution's questions were not

purported to elicit an exhaustive list of every State agent Butler had ever spoken with. Similarly, Petitioner cites to specific portions of Butler's trial testimony as evidence that Butler testified only to meetings with police detectives and did not reference meetings with the investigator.  Petition at 115 (citing Trial Tr. Vol. V at 1020-21, 1059-60).  Again, however, that testimony was in response to questions specifically about certain conversations Butler had had with police detectives, it was not purported to include all conversations Butler had with all agents of the State.  Trial Tr. Vol. V at 1020-21, 1059-60.  And Petitioner's citations to the investigator's testimony suffer the same deficiency – the testimony was in response to specific questions about specific persons and was not purported to be a comprehensive discussion of all of the investigator's conversations. Petition at 115 (citing Trial Tr. Vol. VI at 1437, 1485, 1489-91, 1497); Trial Tr. Vol. VI at 1437, 1485, 1489-91, 1497.

Third, Petitioner argues that he was "denied access to open-file review of the Oklahoma County District Attorney's file."  Petitioner's Supp. Br. at 32 n.5.  However, that request, and the District Attorney's response that the file did not contain information concerning Butler "beyond that which was previously disclosed to your client during the discovery process, contained in the transcripts of the trial proceedings, or available through public records," occurred in 2022 and cannot be cited as cause for failure to develop the claim at an earlier date.  Motion for Discovery at 5 n.1; [Doc. No. 17-1] at 1, 4.

As such, Petitioner effectively relies only upon an affidavit stating that Butler said he had "spoken with" an investigator from the Oklahoma County District Attorney's office "at some point prior to [Petitioner's] trial."  [Doc. No. 16-34].  But even that affidavit does

not indicate anything specific about the alleged interaction between Butler and the investigator, such as where and when it occurred or what was discussed, nor Petitioner does provide an affidavit from Butler himself.  *Cf. Banks v. Dretke*, 540 U.S. 668, 682-84 (2004) (discussing petitioner's discovery and evidentiary hearing requests that contained specific allegations and detailed information, including affidavits from the key witnesses themselves).  This affidavit does not suffice as clear and convincing evidence to rebut the presumption of correctness of the OCCA's factual determination that Petitioner could have raised this claim on direct appeal or in the first post-conviction application.  *See* 28 U.S.C. § 2254(e)(1).

Accordingly, Petitioner has not shown cause to excuse his procedural default.  And because Petitioner has not shown cause, his *Brady* claim fails and it is not necessary for this Court to consider his arguments regarding prejudice.  *See Simpson*, 912 F.3d at 571 (10th Cir. 2018) ("[Petitioner] must establish both cause and prejudice to overcome the state procedural bar, and we must reject his *Brady* claim if he fails to show either requirement.").  Relief is not warranted on this subclaim.

### 2. *Conclusion*

Relief is denied on Ground Seven.  Petitioner has failed to meet his burden under 28 U.S.C. § 2254(d)(1) of showing that the OCCA unreasonably applied *Brady* and its progeny.  Additionally, Petitioner has failed to meet his burden under 28 U.S.C. § 2254(d)(2) of showing the OCCA relied on an unreasonable determination of the facts or that the OCCA did not adjudicate his *Brady* claim on the merits.  Further, Petitioner has

not established cause and prejudice to overcome the OCCA's procedural bar of his additional *Brady* claim.

### G.   Ground Eight:  Accumulation of Error

In his final ground for relief, Petitioner argues that even if individual errors were harmless, the combined effect of the errors deprived him of a fair sentencing.  Petitioner raised this claim on direct appeal and the OCCA denied relief, concluding that because there were no errors warranting reversal or modification, relief was not warranted.  *Fuston DA*, 470 P.3d at 333.

The cumulative error analysis addresses the possibility that two or more individually harmless errors might have a "cumulative effect on the outcome of the trial such that collectively they can no longer be determined to be harmless."  *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003).  To obtain habeas relief, a court must find that "the cumulative effect of the errors determined to be harmless had a 'substantial and injurious effect or influence in determining the jury's verdict.'"  *Hanson v. Sherrod*, 797 F.3d 810, 852 (10th Cir. 2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

This Court has not found error.  Therefore, the cumulative error analysis is unwarranted.  Petitioner is not entitled to relief on Ground Eight.

### IV.   Conclusion

After a thorough review of the entire state court record, the pleadings filed herein, and the applicable law, the Court finds that Petitioner is not entitled to the requested relief.  Accordingly, Petitioner's petition for writ of habeas corpus [Doc. No. 16] is hereby DENIED.

### A.    Motion for Discovery

Petitioner's Motion for Discovery [Doc. No. 17] is also DENIED.  In federal habeas, discovery is not permitted as a matter of course, but only in the discretion of the court and for good cause shown.  Rule 6(a), Rules Governing Section 2254 Cases in the United States District Courts.  Good cause is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (internal quotation marks omitted, alteration incorporated).  Courts may not allow fishing expeditions to investigate mere speculation.

Petitioner's discovery request is based on generalized suspicions that the prosecutors withheld exculpatory evidence.  Such claims amount to a fishing expedition and do not satisfy the good cause standard.  To the extent Petitioner specifically requests discovery regarding a meeting between State witness Brian Butler and a State investigator, he does not provide specific allegations that, if true, would demonstrate that he is entitled to relief – particularly as he is unable to overcome the State's procedural bar on the claim. *See* discussion *supra*; [Doc. No. 17] at 6; Petition at 108, 115; *see also Bracy,* 520 U.S. at 908-09; *LeFevers v. Gibson*, 182 F.3d 705, 723 (10th Cir. 1999).  Accordingly, Petitioner has not shown good cause for discovery and the request for discovery is denied.

### B.    Motion for Evidentiary Hearing

Petitioner's Motion for Evidentiary Hearing [Doc. No. 21] is also DENIED.  Petitioner requests an evidentiary hearing with respect to his *Atkins*, *Strickland*, *Batson*, *Napue*, and *Brady* claims (Grounds One, Two, Five, Six, and Seven).  "The purpose of an

evidentiary hearing is to resolve conflicting evidence." *Anderson v. Attorney General of Kansas*, 425 F.3d 853, 860 (10th Cir. 2005). If there is no conflict, or if the claim can be resolved on the record before the Court, then an evidentiary hearing is unnecessary. *Id.* at 859, 860. Additionally, "where the purpose is to discover evidence creating a genuine issue of fact as to a petitioner's entitlement to habeas relief," the proper course is to seek discovery rather than to request an evidentiary hearing. *Hooks v. Workman*, 606 F.3d 715, 730 n.14 (10th Cir. 2010).

Even without addressing whether Petitioner can satisfy the stringent standards of § 2254(d) and (e), an evidentiary hearing is unwarranted to resolve the legal issues presented here. The Court has examined Petitioner's claims and has considered his arguments. However, no information gained from an evidentiary hearing would affect the legal conclusions on those claims. Accordingly, the request for evidentiary hearing is denied.

### C.   Certificate of Appealability

As a final matter, the Court must consider whether to issue a certificate of appealability (COA). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Court declines to do so.

As set forth in 28 U.S.C. § 2253(c)(1), Petitioner may not appeal the denial of his habeas petition unless he obtains a COA. A COA is claim-specific and appropriate only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2), (c)(3). When a claim has been denied on the merits, the COA standard is whether "reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (holding that AEDPA's deferential standards must be incorporated into the consideration of a COA). When a claim has been denied on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA may issue only when Petitioner shows that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed each issue raised by Petitioner, the Court concludes that, for the reasons set forth herein, none satisfies the standard for the granting of a COA. Therefore, the Court DENIES a COA as to all of Petitioner's grounds for relief.

Judgment will be entered accordingly.

IT IS SO ORDERED this 12th day of July, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE